## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2479 | **DATE** | 8/12/2002 |
| **CASE TITLE** | Adams vs. CBS Broadcasting, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** CBS's motion (Doc 28-1) for summary judgment is granted in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 13 2002 date docketed | 39 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | SCT courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SYLVIA ADAMS, )
)
Plaintiff, )
)
vs. ) 01 C 2479
)
CBS BROADCASTING, INC., )
)
Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant CBS Broadcasting Inc. ("CBS") for summary judgment of all claims of the complaint. For the reasons set forth below, the motion is granted.

### BACKGROUND

The following facts are undisputed. Plaintiff Sylvia Adams ("Adams") is employed as a technician at WBBM-TV, a television station located in Chicago and operated by CBS. From 1988 until 1995, Adams worked for other television stations operated by ABC, CNN, WGN, PBS, Fox, and Univision as well as Harpo Studios from 1988 to 1995. She also worked with CBS stations as a researcher for a time in 1985-86 and periodically as a part-time technician from 1994 until she was hired on a full-time basis in 1998.

CBS's hiring and wage payment practices vis-à-vis full-time technicians are governed by a national collective bargaining agreement. The agreement provides a six-tier scale for determining starting wage levels, based on the amount of time the technician has worked for CBS (1 year and

less, 1-2 years, 2-3 years, 3-4 years, 4-5 years, and 5 years and over). Each wage listed represents the minimum an employee with the corresponding duration of CBS employment can be paid. Because the amount listed is a minimum figure, technicians can be paid more than the amount listed in the wage scale, and employees can negotiate for a higher salary that they are initially offered without running afoul of the terms of the collective bargaining agreement, even though they are not informed of their ability to negotiate at the time they are hired.

At the time Adams was hired, she had accumulated just under 1,781 hours of experience as a technician with CBS, or less than one year of full-time employment. Because of the quality of Adams' recent CBS work and her positive attitude, her starting salary was placed at the third tier, or on par with employees with 2-3 years' experience with CBS. Adams did not negotiate for a higher salary when she was hired even though she knew that she was not starting at the top wage tier. She contends that she did not know that she could be paid more until March 1999, when coworkers informed her that they thought she would be making more money based on her experience at other networks.

After these conversations took place, Adams entered a grievance with her union representative. Unsatisfied with the outcome of the union's involvement, she filed a charge of discrimination with the EEOC in December 1999. Finally, in April 2001, Adams filed the instant suit, alleging violations of the Equal Pay Act, sex discrimination, and racial discrimination in violation of Title VII and 42 U.S.C. § 1981. The following April, the parties stipulated to the dismissal of the equal pay and sex discrimination claims. CBS now moves for summary judgment of the remaining two counts.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is with these principles in mind that we address CBS's motion.

## DISCUSSION

CBS first contends that summary judgment is appropriate in this case because both of the remaining counts are time-barred. To support a later suit under Title VII, charges of discrimination must generally be filed with the EEOC within 300 days of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e)(1). Section 1981 claims are governed by state statutes of limitation; in Illinois, the applicable time period is two years. Smith v. City of Chicago Heights, 951 F.2d 834, 836-37 n.1 (7th Cir. 1992).

Adams filed her complaint in April 2001, two years and ten months after she was hired. CBS argues that her § 1981 claim came ten months too late to be viable. Adams offers no rationale to contradict this contention, instead focusing her response solely on the timeliness of her Title VII claim. Indeed, even if the statute of limitations did not begin to run until March 1999, when she claims she was first made aware of her injury, her April 2001 complaint would still be out of time. Consequently, we grant CBS summary judgment as to Adams' § 1981 claim.

According to CBS, the clock began to tick on Adams' Title VII claim on the date she was hired. If they are correct, her EEOC charge would have been filed approximately eight months past the statutory deadline. Adams rejoins that she did not know of her injury until her March 1999 conversations with coworkers regarding her rate of pay, and thus her December filing was within the 300 days. It is well-settled that a statute of limitations does not begin to run until a putative plaintiff knows or should have known that a wrong has occurred. See, e.g., Sellars v. Perry, 80 F.3d 243, 246 (7th Cir. 1996). For its part, CBS attests that Adams' awareness of three things at the time she was hired definitively establish that she should have known of the possibility of wrongdoing at the earlier time. First, Adams knew that there were pay rates for technicians higher than the rate she was offered. Second, Adams presumably knew how many years of experience, with CBS or otherwise, that she had accumulated up to that point in time. Third, Adams knew that the rate of pay was based on years of experience. Therefore, CBS argues, if Adams felt she was being compensated at a rate below what was warranted by her level of experience, she had all the information necessary to make that conclusion at the time she was hired. Adams responds that she did not have the requisite information until the March 1999 conversations, in which she claims she learned she was "underpaid compared to white . . . technicians." Pl.'s Resp. at 4. However, this characterization is a far cry from

the content of her proffered evidence regarding those conversations, which indicates that the only new data she gained at that time was that her coworkers assumed that she would have started at a higher salary rate. In addition, one employee's opinion of what another should be paid has little, if any, relevance to an analysis of an employer's reasoning and motives. Therefore, Adams cannot claim that, as of March 1999, she was given the piece she needed to complete an otherwise unsolvable puzzle. Consequently, we agree with CBS that Adams' EEOC complaint was not filed in a timely fashion, precluding her from pursuing a Title VII claim in this court. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 453 (7th Cir. 1990).

Even if Adams had filed her EEOC charge within the 300 days, her cause of action would not survive the instant motion. In an employment discrimination setting, a plaintiff facing summary judgment without direct evidence of discriminatory motives must raise a presumption of discrimination by showing four prima facie elements: membership in a protected class, relevant qualifications, an adverse employment action, and similarly situated employees not in the protected class who were treated more favorably. See, e.g., Lalvani v. Cook County, 269 F.3d 785, 789 (7th Cir. 2001). For all intents and purposes, Adams leapfrogs over her prima facie case and argues that CBS is not being truthful about its motives for hiring her at a level of compensation below what she feels she deserves. We do not have the luxury of bypassing the sufficiency of these four aspects of her case. Peele v. Country Mutual Ins. Co., 288 F.3d 319, 327, 331-32 (7th Cir. 2002). If Adams cannot establish the presumption of discriminatory behavior, there is no reason for CBS to explain itself, and Adams' attacks on their explanations are unnecessary. Id.

Adams' showing on her qualifications, the second prima facie element, is insufficient. Chiefly, she claims that deCourt, Haworth, and Collins were aware of the full extent of her

qualifications before they decided to hire her and set her initial rate of pay. In her opinion, her wage level should have been calculated based on the sum total of her prior television experience. Adams' argument misses the mark in one very important aspect. Even assuming the three decisionmakers were fully apprised of the totality of her prior work, they were not required to include her work with non-CBS stations in a calculation of her experience for salary purposes. At no point does Adams refute that she was paid at a level two tiers above what was required for an employee with her duration of CBS experience; instead her argument revolves around a contention that she should have received more credit for her non-CBS experience. Boiled down to its essence, Adams' claim is that CBS acted in a discriminatory manner by not informing her that she could attempt to negotiate for a higher starting salary if she thought her prior employment warranted a higher rate. She does not dispute, however, that CBS did not disclose to any candidates that they could negotiate for a larger salary. Neither does she argue that they were required to make such disclosures. Whether Adams' time with other networks should have factored more into the decision of appropriate salary level is a judgment call that is the unique province of the employer in this case. We cannot and will not superimpose our idea of what non-CBS experience is worth for a technician working for that network. See Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). Because Adams can show neither that she was qualified to start with a higher wage nor that employees not in her protected class were treated more favorably, her Title VII claim crumbles.

Adams also comes up decidedly short on the fourth element, which involves identification of similarly situated employees who received more favorable treatment. Although no magic formula exists for determining whether two employees are similarly situated, attributes such as experience, education, and qualifications relevant to the position in question usually factor into a meaningful

comparison. See Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002), quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000). Adams cites only two employees as comparable: Lori Kovitz and Mary Calvin. According to Adams, these two women were hired to fill positions similar to hers, but they were paid at a higher level than she even though they had four years of experience compared to her five. At no point, however, does Adams indicate whether Kovitz and Calvin's listed experience was with CBS or total experience in television production. In addition, both Kovitz and Calvin were hired in 1981, 16 years before the agreement that controlled at the time Adams was hired took effect. Adams offers no evidence that the terms that applied to her alleged comparable at the time their employment commenced were the same as the ones that applied to her. It is her burden to provide us with the tools we need to engage in a reasonable comparison of the employer's treatment of employees from different racial groups, and we will not assume that the employer played favorites along racial lines without a solid basis on which to do so. See Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001).

Finally, even if Adams had managed to make out a prima facie case, the statistical evidence Adams offers to show that CBS's reasons for starting her at the third tier of the wage scale were pretextual is woefully inadequate. She attests that this evidence shows CBS consistently paid African-American technicians at a lower tier than other technicians with commensurate levels of experience and argues that it creates a material issue of fact as to the veracity of CBS's reasons for not fully crediting her for her non-CBS experience. Statistical evidence can assist in showing pretext in conjunction with other indicators, but it is seldom enough alone to establish pretext. See, e.g., id.; Bell v. E.P.A., 232 F.3d 546, 553, 556 (7th Cir. 2001). Besides the fact that portions of the tables containing the statistics are illegible, the small sample size, the lack of supporting materials, and the

failure of the evidence to take into account nondiscriminatory explanations for the employment decision make the statistical comparisons completely unhelpful to a determination of pretext. See Guerrero v. Ashcroft, 253 F.3d 309, 315-16 (7th Cir. 2001); Radue, 219 F.3d at 616-17. Nothing that Adams has offered would cast doubt on CBS's truthfulness.

## CONCLUSION

Based on the foregoing analysis, CBS's motion for summary judgment is granted in its entirety.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: __August 12, 2002__